The court's fifth division is now in session. Honorable Justice Robert E. Boyd is presiding. All right, go on. Proceed. The first case is 15-1846, Siena at Old Orchard Condominium Association. David, the lawyers who are going to argue that case, please approach the bench and introduce yourself to the court. It pleases the court Diane Silverberg on behalf of the Siena at Old Orchard Condominium Association and its Board of Directors. It pleases the court Sean Dory on behalf of Siena at Old Orchard, LLC and its managing member, Lenar Chicago, Inc. It pleases the court Michael Cecil on behalf of Larry Kierith, defendant. How are we going to split up the time here, as far as the FLEs? I'll leave it up to most of their arguments. I have a small sliver, so I don't need very much time here. Okay, and you're going to need some time to rebuttal? Yes, I'd like three minutes rebuttal, please. All right, let's proceed. Before you start, let me ask you a question. Sure. Let's assume we adopted everything that you said in your briefs, except the releases. How do you get by the releases? Well, with respect to the releases, and for my guidance on that, I look to the Faber-Haber decision and also to the Miller decision. I believe that with respect to the releases, the release contemplated some very specific items. And you'll note that for both of the releases, and there were two, and that's an important issue that I'll get to in a moment, there was a punch list. And I think that the releases were very specific to the punch lists. Now, one might ask, and I think this is an important question, if the release was as comprehensive as my esteemed opposing counsel would have us believe, why was there a second release? I believe that the answer necessarily is that they felt there was another issue that had to be addressed, a minute issue. If you compare the two punch lists, there was only one slight difference in the two punch lists, but yet it necessitated the second release. Comparing that to the issues that we have that were set forth in what we refer to as the scoliation letter, we have a comparison of claims that were estimated at around $28,000, as set forth in the releases, versus a $1.7 million claim that was what was contemplated by the work that needed to be done when we found all of these defects. Did the release say a release of all claims? It did. But so did the Faber-Haber case. And in that release, the court found that the fact that, in fact, in the Faber-Haber case, there was discussion about the legal services that were provided. Now, in the Faber-Haber case, the release was specific to the legal fees that had accrued, which had not been paid by the plaintiff in that case. But later it was discovered that there was malpractice, and the court found in that case that the malpractice was not contemplated at the time that the releases were entered into. And I would submit that nothing forbids the court from interpreting what the parties' intentions were at the time that the release was entered into. And I would respectfully submit on this issue that the mere discrepancy in the dollar amounts, the $28,000 versus a $1.7 million claim, suggests that the latter claim could not possibly have been contemplated by the parties at the time that they entered into the initial two releases. Well, what about the memo that they're alleging that basically indicates that it was admitted that the releases were effective? With respect to that, that memo was written by laypeople, and I think that it would be an unusual set of circumstances for that to be construed to rule out legal issues. I think the memo that you're talking about really goes to the issue of notice, and notice is obviously a big issue in this case. The notice provisions are the set forth in the original unamended Article 12 of the declaration were, of course, prepared by the developer in this case, and they were articulated to be mandatory provisions. Now, the memo that was sent, again, by laypeople who sat on the board, to the extent that that could be construed, I don't think there's any argument that it's construed as a release. But I would submit that that certainly didn't constitute a notice. As we've articulated in our brief, there were five components that had to be in a notice. And what I think is really important here, and I think it's codified in our state statutes, is what happens when we don't have strict adherence to those five components. Here we have a situation, people who buy condos, like a house, it's one of the largest purchases that a person will make. And what this declaration provided in its notice provision was a situation where if you did, if you triggered the notice, you had 120 days to assert your claims or they were waived. And the fact that they were waived was expressly set forth in the declaration. So there can be no doubt that this was setting up a situation where you act. If you fail to act, your claims are gone. Let me ask you this. Yes. When the developer controlled the board, were there reserve accounts set up to cover contingencies in the future? I don't know that answer off the top of my head. Certainly the reserve accounts would not have been sufficient to cover these events that constituted the $1.7 million claims that we were looking to recover from them in the lawsuit that underlies this appeal. Yes, but if you look at all of the cases decided by the state of Illinois since the invent of the Condominium Act, you will find that in those cases where there has been a finding that a developer when sitting on the board or controlling the board has breached his fiduciary duty, that the breach is usually as a result of not setting up reserve accounts because the statute provides for certain reserve accounts. Correct. Your case seems to be silent on that. The only case I've seen in 57 years that's silent on reserve accounts. Well, the issue really for this in terms of a breach of fiduciary duty count is as against the former board president who it's alleged in our underlying complaint signed the releases without the authority of the board, among other things. Here the case... The press authority of the board. Correct, correct. All right, you can proceed. All right, if I may then. The threshold issue that I believe we need to address is whether the letter that was sent by Mr. Bickley on behalf of the association and its board constitutes notice. And going back to the original declaration and its Article 12, there were, I would say, five primary provisions that were expressly called mandatory by the developer that drafted this. And they required, among other things, an articulation of the nature of the claim, including the defect or the default, if any, in the details of the people who were involved, the legal basis of the claim, that is, the specific authority out of which the claim arises. That is notably absent from the letter that was sent by Mr. Bickley. Did you refer to that letter? I did not. It also requires that there be an articulation of the proposed remedy. That, too, is not included. It also requires that any evidence be provided, and we would submit that the report that was attached may satisfy that. But it also requires that the claimant articulate in its letter that the, that it will meet with the respondent in good faith to try to resolve the claims. Now, if we look at the cases that were cited both by the trial court. So, of course, the letter doesn't say this is pursuant to that section. It does not. And it doesn't say that it has anything to do with arbitration. That is correct. Okay. That is correct. And the peril that an entity like the association finds itself in, if the letter that was sent, which expressly comments on the fact that it is inviting the developer to come to inspect and review the areas that are required to be repaired to avoid a claim of spoliation. Now, if a letter such as that is construed as notice, it puts in peril a party who sends any kind of communication. Will that communication trigger the notice? It puts them in a state of not knowing. And because it triggers the 120 days, that is a perilous situation for a party to be in. And I would submit because these are mandatory provisions, the fact that they did not include these mandatory provisions means that this was not a notice. Now, all of the cases that were cited by the court and by my opponents are cases in which the notice issue was whether or not somebody actually received notice, notwithstanding the fact that notice had been sent in a manner that wasn't countenanced by the agreement. That is not the case here. Although it was not sent in a manner that was dictated, that is not the primary issue. It is not a question of whether they actually received it or not. We know that they did because they responded. Now, if we allow a letter such as this to constitute notice, I would respectfully submit that it precipitates a situation that could give rise to a forfeiture, which is obviously not favored by the courts of the state. Now, let's say that the notice is not effective. Don't spend all your time on the notice. Okay. I'm moving on to the notice. We've already addressed the releases issue, so I will not spend more time on that unless the court has questions about that. A primary issue that I think has also been raised is the question of the primacy of the Federal Arbitration Act. And I do want to touch on that. As a threshold issue, we have the situation where there was no Rule 19 notice that was sent out. That's a procedural thing. Had the defendants in this case wished to assert that the federal law had primacy over the state statute, if there should have been a Rule 19 notice sent, there wasn't. So what do we know about the state of the law and its state policies regarding arbitration? This is not, I would submit, like the cases with the nursing home cases. In Illinois and in the Condominium Property Act, we have a very express articulation of what the policy of this state is regarding what I will refer to as these gotcha provisions. These are the provisions that are not just as to arbitration but also as to mediation and also set forth a very fast time which, if not honored, results in a forfeiture of claims. So I would see the policy of this state as arbitration and mediation is to try to find arbitration and mediation when provisions provide for it. Except in this case, the statute, and I would refer the Court to the Fosler decision in this regard. The Fosler decision expressly contemplates that if there is a codification of the state policy that demonstrates, if you will, a hostility towards arbitration, that it won't be enforced. And in this particular instance, while we're not looking for retroactive application of Section 18.9, 18.9 makes very clear what the state policy is with respect to arbitration. And that is, and I can quote it, that any provision in a condominium instrument is void as against public policy and ineffective if it limits or restricts the rights of the Board of Managers by, and among other things, requiring that it proceed to an ADR proceeding. So I would submit that this isn't a situation where our state statutes are silent on the issue of arbitration or where it's merely a situation where a contract says you do or don't have to do it. We have a very, very firm state policy. But you have an argument here that you knocked out the arbitration proceeding. We do. You ought to discuss that, because if a contract provides for arbitration, we're going to find arbitration. But you have an argument that you knocked it out. Correct. And I mean, correct. And in that respect, Section 27 of the Condominium Property Act sets forth the procedure for amending the declaration. Now, here, and this is sort of part and parcel of why I refer to this as a gotcha provision, there is a provision in Article 12 of the original declaration that said, oh, and by the way, you can't amend this provision for 20 years. Now, the Article 27 of the Condominium Property Act. The trial court found that to be against public policy, the trial court. Well, I believe the trial court ultimately found that the amendment was proper. What the trial court ended up saying is that it believed it was an interesting argument. Prior to the time that we got to the end of the underlying litigation, the trial court had articulated, and we referenced this in our briefs, that it felt that had we amended the declaration, that would have been an effective defense against the, I believe it was the legal fees argument. We did, in fact, amend it. And on reconsideration, the court did find that Article 27, excuse me, Section 27 of the Condominium Property Act, in fact, was in conflict with this provision of the declaration, and pursuant to Article or Statute 2.1 then, because it was in conflict, would be deemed null and void. So we would submit that there was an effective amendment of the declaration to remove this oppressive ADR provision. You know, you're way past your time. Why don't you spend the rest of it on your remote? Thank you. Before you start, let me ask you, was there a reserve account here, or that's not an issue? I don't know. It's not an issue in the case. Okay. It's never been brought up. I would like to be respectful. It probably should have been brought up, but that's besides the point. Go ahead. I would like to be respectful of Coe out the lead counsel, so I'll try to make sure I leave adequate time for him. I do want to point out that with respect to the releases, we argue that regardless of whether this court agrees with the decisions made by the lower court, those releases are still there. They still conclusively precluded the lawsuit filed by the association. I disagree with counsel's characterization of the Fable-Hager case. Our releases are quite different and very specific as to both construction defect claims and any claims prior to turnover. With respect to the comments that the declaration sets up a 120-day statute of limitations, that's simply not right. It's actually quite a lot longer than that, and it's a clock that they start themselves. The declaration, of course, we argue prohibits the lawsuit that they filed because of the existence of the ADR provision, the arbitration provision, Section 12, as I'll refer to it. And I think the point I want to make first is that the trial court correctly decided that Section 12 governs this claim. This claim arose and, if you agree with the trial court's decision regarding the notice, was extinguished prior to any amendment that they effected. Section 12.02 of the declaration provides, this is a contract between the parties, the declaration. It provides that the parties agree to encourage the amicable resolution of disputes without the emotional and financial costs of litigation. Unfortunately, in this case, what happened is that the association didn't follow the rules that they agreed upon and attempted to save themselves by effecting this amendment, which I'll come back to in just a minute. But I do want to point out that the association admitted through its conduct that Section 12 governed these claims because it undertook the required vote, which is in the very first paragraph of Section 12, to obtain the approval of 75 percent of its owners before it pursued its claims. And then it sent us the highly disputed August 2010 notice letter. So under these circumstances, we think the trial court was correct in deciding that these claims are subject to Section 12. We also think that the association's attempt to amend Section 12 out of the declaration and then sue in court both had no effect on this claim and was itself an invalid amendment. As was referenced earlier, the Illinois Arbitration Act governs when the parties have a contract for arbitration, and it specifically says that when there is an agreement to arbitrate, the parties become irrevocably bound to follow that process. So we don't think that any amendment, any activity that the association could take unilaterally, could remove this specific claim from the requirements of Section 12. So what you're saying is that a developer could do whatever he wants to do against the homeowners if it's in the governing papers and get away with it. I'm not saying that a developer can do whatever he wants to do, but with respect to arbitration provisions, the policy of Illinois and the federal counterpart to that is that if the parties agree in a contract to arbitrate their claims, those parties are irrevocably bound to do that, and especially in this case where a claim arose, they acknowledged it arose, they treated it as if it was a claim under Section 12, and then when they realized that they failed to follow through with the required process resulting in a waiver, they decided to try this amendment maneuver and then sue us in court, which I don't think is an appropriate way to handle these cases, and it's specifically barred by the contract. In addition, it's also barred by an Illinois Supreme Court opinion, and that would be the Kinkle versus Singular Wireless case where the Supreme Court said one party to a contract may not unilaterally modify a contract term, whether it's an arbitration clause, a disclaimer of incidental or consequential damages, liquidated damages clause, or any other term. Now, isn't it true under the Condominium Act that the developer, he always controls the board and what goes on until he sells the units, and after he sells the units, the homeowners come over, come in and they redo everything that he did? I mean, is that what goes on? It's been going on since the invent of the Condominium Act. When the unit owner board takes over, they do have the ability to change certain things, but with respect to – Because everything that was done before is done for the developer, and nothing's been done for the homeowner, and that's what normally happens. I mean, this goes on in anybody who buys a condominium. I'm one of those fools who lives on a condominium, so I know what it's all about. I was one of those fools as well, no longer, but the developer may manage the board a certain way, and then I would agree the unit owners may manage the board a different way, but that doesn't mean that there aren't certain rights reserved for the declarant, the developer, in that contract between the parties, and there's plenty of cases that we've included in our briefing citing that. I do want to advance with respect to the notice argument. We think that the notice, as we've explained in our briefing, has all of the material elements of what was required by the declaration to initiate the alternative dispute resolution process. If you look at the content of the notice, it clearly says that the association- You know, we see that it does the only problem. It doesn't say it's a letter for arbitration. It doesn't say it's pursuant to a section, but everything else is there. I would love, then, to jump to some arguments that we make in our cross-appeal. One of those arguments is that our clients should have been awarded some additional fees and costs. I'm going to stand on our briefing on that issue, but I do want to raise, unfortunately with the Court, that I think the trial court did commit an error in, quote, declining to consider our Rule 137 argument. In this situation, we had a very clear arbitration provision and releases. I think that 137 required that this case not be filed in court. We first point to the Edward Yabbitt's Eye Center case, which is a very similar situation in which a party filed a lawsuit, despite the fact that the claims in the lawsuit fell clearly within an arbitration provision between the parties, and there the Second District reversed the trial court's decision not to award 137 relief. Similarly, in this case, I would like the Court to be aware that at the very beginning, within 30 days of being served with this complaint, we sent a very detailed letter to the association's attorneys explaining many, many reasons why this case needed to be withdrawn. That letter was ignored. In the Baker v. Daniel S. Berger case, a very similar situation happened. A letter was sent at the beginning, and there the First District ruled that it was a error. I believe the letter is in the record of this case. The letter is in the record. Yes, Your Honor. Here, the trial court acknowledged the remarkable circumstance where it had an admission by a party years prior to the lawsuit being filed that the party would lose, and yet they still sued us anyway. Our position is that the trial court should have considered whether our client should be made whole at least under Rule 137, and that it was error of the trial court to decline to consider the motion. I would like to be respectful of co-counsel's time, so unless the Court has any other questions, I'd like to stand on the briefing with respect to the remainder. Thank you. May it please the Court. Very briefly, we're in a different situation than the developers, and I know we've talked about this numerous times, but for my client, who is a former president of the association, the only issue really is whether or not the memorandum to all the unit owners constituted notice to my client that there was a claim that was going to be pending against him. And to me, reading plain English by saying you're going to sue my client and that you're going to look to the insurance company to pay for all the damages, I don't know how much clearer it can be that that's a claim, especially when you use the notice provisions in the deck and bylaws that says you have to state the nature of the claim, which it did, it was the defects in the construction, the legal basis of the claim that they wanted to sue my client and obtain the insurance money, the proposed remedy, which was filing the lawsuit, and the evidence that depicts the nature of the claim. In the notice, it says any unit owner is free to walk around the premises in the common area and it's clear as day what the damages are. So my client was put on notice, and then the alternative dispute resolution provisions kicked in. The time passed they had until January 11, 2011, came and went, nothing was done, and the declaration is very clear that once that time period passes, forever and ever, amen, there's no claim that you can bring forward. The mention that the ADR provisions were repealed happened almost nine months after that time period expired, and then the passage of 18.9 happened four years after that. So there's really nothing else for us to say, and there was very little mentioned in the record of it, there was very little discussed at the trial court level or even in the briefs until counsel's reply brief, so I just wanted to bring that to your attention. And the only other thing I'd like to point out is there was a comment in the reply brief that under 12a, my client is, that the alternative dispute resolutions don't apply anyway under 12a, but 12a speaks to whether or not you have to get 75% of the vote to file suit against my client. In 12.3, it's clear as day that everything is subject to alternative dispute resolution except for a few named items such as enforcement of condo assessments or suits to obtain an injunction, and none of those apply, so unless there's any questions. Who prepared these notices to the union owner? It's my understanding, my client was not on the board at that point, so it was someone on the board, I don't know the exact, we never got to that at the trial court level, discovery didn't disclose that, but it was someone from the association, it's my understanding. Did your client set up reserves? I know it's not an issue in this case. Did my client set up reserves? It's my understanding that there was a management company, and this is not in the record, but my understanding is there was a management company that really was in charge of running the association, and the board worked with that association. And he didn't control that management company? Not that I'm aware of, no, he had no interest, if you're asking does he have an ownership interest in it, no, not to my knowledge. Ownership control? Not to my knowledge. Okay, thank you. Thank you. Hello again. Just very briefly to touch on the comments of my esteemed opposing counsel. One of my colleagues here discussed the fact that we start the clock ourselves, and I think what's critical in this case vis-a-vis the notice, and I don't want to spend all my time on the notice, is that we need to know when that clock starts. And we're put in a trick bag. If we're going to be doing work, we know that the state law will hold us accountable under theories of spoliation of evidence if we don't allow them an opportunity to come in and see the work before we remove it. You keep wanting to focus on the notice, you see, and we as the court decide what we want to decide, how we're going to decide the case. I told you, go away from the notice. You want to stay on the notice. You don't want to listen to the judge. That's fatal. I'll skip right past it then. All right. With respect to comments of counsel on the issue of there being state law that says that one can't unilaterally amend a contract, I would agree with the court that certainly under the Condominium Property Act, there are provisions that allow for such amendment. There were some questions asked about the communication that was sent by the subsequent board. And, again, those were laypeople, and I would also submit that that was prior to the time that the well-disseminated Fagel-Haber case came out and certainly would have preceded the time that counsel would have discussed that with the client. Very briefly on the issue of the Rule 137, there was a situation in the lower court, and we have not recited it in our briefs because we don't want to exacerbate any concerns, but there was a very similar first district decision, a Rule 123 decision, which we cited to the court not for precedence purposes, but to establish that we had a good faith, objectively, a good faith basis for proceeding with this claim. And I would submit that to the extent that it was cited for that purpose, that should certainly underscore that there was no objective bad faith here in the filing of the underlying claim. Thank you. Well, I want to thank the parties for a very interesting case, very interesting arguments. I want you to know that Judge Lampkin is ill today, but she will listen to the tapes and she will be part of our decision-making process. And we'll take the case under advisement. Thank you. And we'll take a short recess.